# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

|  |  |  |
|---|---|---|
| JASON S. LANDES, | ) | Case No. 5:09cv00034 |
| *Plaintiff* | ) ) ) | REPORT AND |
| v. | ) ) | RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | By: Hon. James G. Welsh U. S. Magistrate Judge |
| *Defendant* | ) ) ) |  |

The plaintiff, Jason S. Landes, brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Commissioner of the Social Security Administration ('the agency") denying his claims for a period of disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI respectively of the of the Social Security Act, as amended ("the Act"). 42 U.S.C. §§ 416 and 423 and 42 U.S.C. §§ 1381 *et seq*. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g). The Commissioner's Answer was filed on September 28, 2009 along with a certified copy of the administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order entered the same date, this case was referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Both parties have now moved for summary judgment, filed their supporting memoranda, and orally argued the case.

**I.        Summary Recommendation**

Based on a thorough review of the administrative record and for the reasons herein set forth, it is recommended that the plaintiff's motion for summary judgment be granted, the Commissioner's motion for summary judgment be denied, the Commissioner's final decision denying benefits be reversed and the case remanded solely for the purpose of calculating and paying benefits because substantial evidence does not support either the ALJ's rejection of two treating-physician assessments of the plaintiff's functional condition or the ALJ's conclusion that plaintiff could perform a range of light work.

## II.     Case History and Evidence

The plaintiff protectively filed his applications on November 1, 2006. (R.43.) Therein, and in his related submissions, the plaintiff alleged disability beginning September 29, 2006 due to spondylosis of the spine and depression." (R.43,216,220,230,238,242; *see also* R.251-256,264-271, 272-273.) His applications were denied, both initially and on reconsideration, and a hearing before an administrative law judge ("ALJ") was held on June 4, 2008. (R.43,117-153,168-171,174-199,205-212.)

At the hearing the plaintiff was present, testified, and was represented by counsel. (R.10,117-143,172-173,200-203.) He was forty years of age [1] at the time of the hearing and

---

[1] At this age the plaintiff is classified as a "*younger person*," and pursuant to the agency's regulations age is generally considered not to affect seriously a younger person's ability to adjust to other work. 20 C.F.R. §§ 404.1563(c) and 416.920(c).

completed eleven years of schooling.[2] (R.57,122,125-126.) He testified that during the preceding fifteen years he had worked as a grounds keeper at a municipal golf course, as a maintenance worker/ snow-maker at a ski resort and as a stocker at a large retail store; he described all of these jobs as "[v]ery hard physical laborer's work," and he stated that he became physically unable to work after September 29, 2006 due to constant "severe" upper and lower back pain with an attendant lower extremity radiculopathy, recurring pilonidal-type cysts which make sitting for any extended period very uncomfortable, and extreme irritability associated with this pain and discomfort. (R.57, 125-135,141-142,145-147.)[3] He stated that the pain has gotten to the point he can no longer walk any appreciable distance, lifting any weight "kill[ed]" his shoulder blades, and driving or even riding any distance in a car was painful and uncomfortable. (R.134-137.)

Earl Glosser, Ph.D., a vocational witness, was also present at the hearing. In his vocational testimony he described all of the plaintiff's past jobs at the ski resort and at the municipal golf course were both skilled and exertionally medium[4] to heavy[5] as performed, and his job as a stocker at Wal-Mart was exertionally heavy and unskilled. (R.147-148.) In response to a hypothetical question posed

---

[2] Pursuant to the agency's regulations an individual with a 7th grade through the 11th grade of formal education has a *limited education*, meaning the individual has an ability in reasoning, arithmetic and language skills, but not enough to allow an individual to do most of the complex job duties needed in semi-skilled or skilled jobs. 20 C.F.R. § 404.1564(b)(3) and § 416.920(c)

[3] Dr. G. William Harper's office records, variously dated between August 2004 and November 2006, show that the sought treatment both for recurring infected cysts and for persistent upper and lower back pain with attendant "malaise." (R.353-395.)

[4] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, he or she is deemed to be able to do light and sedentary work. 20 C.F.R. § 404.1567(c) § 416.967(c).

[5] Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, he or she is deemed also to be able to do medium, light, and sedentary work. 20 C.F.R. § 404.1567(d) and § 416.967(d)

3

by the ALJ, Dr. Glosser testified that an individual with the plaintiff's vocational profile and the capacity to perform work at a level outlined by the state agency medical (R.522-528) and psychological (R.530-533) reviewers would be able to do light janitorial, simple assembly or simple inspection work. (R.150-151.)

The plaintiff's medical records show that he first experienced some "mild" neck and shoulder discomfort in the Spring of 2002. (R.397.) At that time his weight was 240 lbs. He was working full-time at Massanutten Resort and also mowing lawns at the public golf course in Harrisonburg. When he saw Frederick Fox, M.D., Parafon Forte (a muscle relaxant) and Motrin (a mild to moderate pain reliever) were prescribed as a treatment modality, and the plaintiff was instructed on some neck strengthening exercises. (*Id.*)

Approximately three and one-half years later, in October 2005, the plaintiff again saw Dr. Fox about back pain. (R.397-398.) On this occasion he reported that he was working full-time doing maintenance work at the golf course, but he was missing a significant amount of time due to his back pain. He described his pain at that time as "persistent." It was noted that Dr. G. W. Harper, the plaintiff's primary care physician, had prescribed a combination of Sulindac, Flexeril, and Oxycodone and sent the plaintiff to physical therapy which the plaintiff felt had worsened his symptomalogy. Based on his review of a series of radiographic studies obtained the preceding month, Dr. Fox noted that they demonstrated cervical and lumbar degenerative disc disease and "extensive spondylosis throughout the thoracic spine," and on clinical examination he found the plaintiff to be depressed

4

("sad"), to exhibit "diffuse tenderness" of the thoracic and lumbar areas of the spine, to be significantly limited in his ability to bend forward, and to be exogenously obese. [6] (*Id.*)

When he next saw the plaintiff three weeks later, Dr. Fox found the plaintiff was "in some chronic distress." (R.398-399.) His clinical impression was that the plaintiff was experiencing the symptoms of ankylosing spondylitis (a type of spinal arthritis), and a short term regime of Indocin and Celebrex (non-steroidal anti-inflammatories) was prescribed. (*Id.*)

On December 30, 2005 the plaintiff's primary care physician referred him to Joseph Burge, M.D., for a rheumatologic assessment . (R,385,399.) Based on laboratory study results, his review of X-ray and MRI studies and his January 19, 2006 clinical examination, Dr. Burge concluded that the plaintiff's condition was a diffuse idiopathic skeletal hyperostosis/spondyolos [7] ("DISH Syndrome," sometimes called "Forester's disease") with attendant chronic upper back pain, a possible intermittent ulnar neuropathy of both arms, and probably related depression. (R.320,321-326,374.) He recommended that the plaintiff be referred for a pain management evaluation. (R.320.)

Pursuant to a *fitness for duty* examination on March 23, 2006, Dr. Stephen Phillips similarly found the plaintiff to have "significant degenerative disc disease of the spine." (R.332.) In Dr. Phillips' opinion this condition world require the plaintiff to be "careful about the duties he performs" in the future. (R.232,233.)

---

[6] The plaintiff's weight in October 2005 was 280 lbs. (R.398.)

[7] A form of rheumatic spinal disease characterized by excessive calcification and bone growth along the sides of the vertebrae.

Beginning on March 9, 2006 and continuing throughout the remainder of the year, the plaintiff was seen monthly or more often at Balint Pain Management Center in an ongoing effort to control his chronic arthritis-related pain. (R.338-352,407-431,433-440,443-467,469-506,509-515.) During this period, the plaintiff continued to exhibit back pain consistent with severe thoracic spondylitic changes. He underwent a series of radiofrequency rhizotomy thoracic medial branch nerve blocks which provided him with some modest short term relief. And until the Fall of 2006 the plaintiff continued to work at the golf course in a light duty status.[8] By October, however, Dr. Balint concluded that the chronic nature of the plaintiff's condition would not permit him to continue "any type of competitive work at the golf course." (R.414,428.)

Addressing in detail the plaintiff's condition in December 2006, Dr. Balint noted that the plaintiff's condition had been confirmed by MRI studies (*see* R.345,432,468) and by various clinical tests; he described the plaintiff's prognosis as "poor;" he noted that the plaintiff's pain was exacerbated by any twisting, bending or repetitive lifting; he noted the adverse cognitive changes caused by the plaintiff's medication regime; he reported that the level of pain experienced by the plaintiff was a constant interference with any required concentration and attention, and he reported that the plaintiff had "significant anger and depression related to his current levels of chronic pain and severe frustration." (R.509-513.) Based on the nature of the plaintiff's condition, including the

---

[8] In May 2006 Dr. Fox noted that the plaintiff "was determined" to continue to work at the golf course" and that he "ought to be offered light duty employment on a long term basis" requiring no frequent bending, stooping or lifting over 20-40 lbs. (R.402.)

precipitating and exacerbating factors, Dr. Balint then detailed the plaintiff's less-than-sedentary [9] residual functional capacity. (*Id.*; *see also* R.514-515.)

During the remainder of 2006 and into 2007, the plaintiff continued also to be followed by Dr. Harper, primarily for medication management which included Flexeril, Celebrex, and Endocet. (R.353-361,362-372,376-378,516-520,549-553.) In his report on the plaintiff's residual functional abilities, Dr. Harper described the plaintiff's condition to be one of "chronic upper and lower back pain" along with "situational anxiety and depression due to [an] inability to work;" he noted that this condition would "frequently" interfere with the plaintiff's ability to maintain concentration and attention; he noted also that the plaintiff's condition would likely cause him to be absent from work more than four days each month; he opined that the plaintiff was physically limited to some type of low stress job; however, and he detailed the plaintiff's residual functional capacity to be less than that required for sedentary work activity on a regular and sustained basis. (R516-520.)

**III. Analysis**

**A.**

---

[9] *Sedentary work* involves lifting no more than 10 pounds at a time and occasionally carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of standing and walking is often required in carrying-out job duties, and jobs are classified as sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) and § 416.967(a).

In denying the plaintiff's claim at the last decisional step, [10] the ALJ recognized that Dr. Balint and Dr. Harper were treating physicians. (R.61.) Nevertheless, he totally rejected their opinions as neither "entitled to controlling weight [nor] special significant." In the case of Dr. Balint, the ALJ rejected his opinion purportedly because of its "[conflict] with his record of treatment as well as the record as a whole." (*Id.*) In the case of Dr. Harper, the ALJ rejected his opinion because "he is not a specialist and [had] referred the [plaintiff] to a . . . specialist for further diagnosis and treatment." (*Id.*)

On careful review, neither of these rationales is supported by substantial evidence. Although the ALJ acknowledged only Dr. Balint to have a significant longitudinal record of treatment (R.61), Dr. Harper's records also document a significant longitudinal record of treatment. [11] And contrary to the ALJ's suggestion that Dr. Harper's referral of the plaintiff for specialized treatment minimized his involvement in the plaintiff's medical care, both Dr. Harper's records and the records of others document his regular involvement in monitoring the plaintiff's condition and managing his medication regime. (*E.g.,* R.319,353-378,399,401-402,414,416,549-552.)

---

[10] To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider: whether the claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of impairments found at 20 C.F.R. Part 4, Subpt. P, Appx. 1; (4) has an impairment which prevents past relevant work; and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §.404.1503(a); *Hall v. Harris,* 658 F.2$^d$ 260 (4th Cir. 1981).

[11] Dr. Harper's records show that he saw the plaintiff six times between September 29 and November 4, 2005, nine times during calendar year 2006, and twice between January and March 2007. (R.377-396,353-378, 549-553.)

Additionally, the ALJ's rejection of these treating source assessments ignores the results of multiple MRI and X-ray studies which demonstrated the plaintiff's very significant multi-level degenerative disc disease and thoracic spondylosis (vertebral degeneration). (R.432,468,345-347.) It similarly ignored the limitation-related clinical findings outlined by each physician, including *inter alia* the plaintiff's abnormal gait, his clinically demonstrated thoracic and lumbar axial pain, his left lower extremity weakness and muscle atrophy, his decreased range of spinal motion, his positive straight leg raising signs bilaterally, the crepitus in his knees, and associated depression and medication-related cognitive problems. (R.509-515,516-520, 353,360,552.)

Likewise, the ALJ's assertion that Dr. Balint's record conflicts with his assessment of the plaintiff's physical and impairments is not based on substantial evidence. In his decision the ALJ offers as evidence of such a conflict only the fact that the plaintiff regularly reported short term pain relief and improved function following a series of monthly thoracic medial branch nerve blocks during the Spring and Summer of 2006 when the plaintiff was attempting to continue to work with restrictions. (R.49-50,449-450,338-352.) By October, however, Dr. Balint's records show that he had come to the conclusion the plaintiff "[was] not capable" of continuing this light-duty work at the golf course and that he was "impaired from any type of competitive work." (R.462-464.) Dr. Balint's subsequent records demonstrate no improvement in the plaintiff's condition. He continued to report the plaintiff was experiencing persistent fatigue, headaches, sleep problems and pain into his mid and lower back, and on examination he continued to exhibit the same significant thoracic and lumbar pain on movement and a lesser amount of neck pain and tenderness. (R.426-427,465-466.) And his pain continued to return despite repeated thoracic denervations. (R.471.)

9

In sum, the functional assessments of each treating physician is supported by a significant longitudinal record of treatment; each is well-supported in the record by appropriate diagnostic studies, both clinical and radiological, and each is consistent with other substantial evidence in the record. *Craig v. Chater*, 76 F.3ᵈ 585 (4ᵗʰ Cir. 1996); 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). They were entitled to be given controlling weight in this case, and the ALJ's contrary finding, therefore, is not supported by substantial evidence in the record. *Mastro v. Apfel*, 270 F.3ᵈ 171, 178 (4ᵗʰ Cir. 2001).

**B.**

The ALJ acknowledged in his questioning of the vocational witness that, if accepted, the treating source functional assessments Drs. Balint and Harper required a finding of disability. (R.151-152.) The hypothetical question he posed to the vocational witness, however, included only a *light work* exertional limitation [12] and two *moderate* non-exertional limitations identified in check-marked boxes on forms utilized by the non-treating, non-examining, state agency reviewers. [13] (R.148-150.)

---

[12] In expressing the opinion that the plaintiff was capable of performing light work on a regular and sustained basis, the medical reviewer erroneously reported that this limitation was not significantly different from the conclusions of the plaintiff's treating physicians. (R.526.) This contradiction of the findings of the treating physicians strongly indicates that this non-examining physician's evaluation of the plaintiff's residual functional capacity was not based on a careful assessment of the evidence and similarly demonstrates the ALJ's improper reliance on this non-examining physician. *See Villa v. Sullivan*, 895 F.2ᵈ 1019, 1023-1024 (5ᵗʰ Cir. 1990) (The reports of non-examining physicians do not provide substantial evidence as a matter of law "when [he] makes specific medical conclusions that either contradict or are unsupported by findings made by an examining physician").

[13] The state agency medical reviewer opined that the plaintiff was exertionally able to do *light work* activity on a regular and sustained basis, and the state agency psychologist identified only a *moderate* non-exertional limitation in the area of concentration and persistence and in the area of performance at a constant pace. (R.523,531.)

It is axiomatic that an ALJ must take into account all the specific limitations of an individual when he crafts his hypothetical question to the vocational witness. *Walker v. Bowen*, 889 F.2$^d$ 47, 50-51 (4th Cir. 1989). Otherwise, the relevance and value of any resulting vocational testimony would be significantly diminished. *Johnson v. Barnhart*, 434 F.3$^d$ 650, 659 (4th Cir. 2006). As a result of the ALJ's failure in the instant case to consider all of the plaintiff's functional limitations and his use the attendant diminished vocational testimony does not constitute a substantial evidentiary basis for his decision, and his reliance on them is in error as a matter of law. *E.g., Hancock v. Barnhart*, 206 F. Supp.2$^d$ 757, 767 (WDVa, 2002).

## IV. Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is not supported by substantial evidence;

2. The record demonstrates that the ALJ's rejection of the treating source opinion of Dr. Harper is not supported by substantial evidence;

3. The record demonstrates that the ALJ's rejection of the treating source opinion of Dr. Balint is not supported by substantial evidence;

4. The ALJ's decision is based on testimony given by the vocational witness in response to an incomplete hypothetical question;

5. The plaintiff has met his burden of proving a medical disability as alleged in his applications; and

6. The final decision of the Commissioner should be reversed.

**VI. Recommended Disposition**

For the foregoing reasons, it is RECOMMENDED that an order be entered REVERSING the final decision of the Commissioner, GRANTING SUMMARY JUDGMENT to the plaintiff, DENYING the Commissioner's motion for summary judgment, and REMANDING this case solely for the purpose of calculating and paying benefits consistent with this report and recommendation.

Should the remand of this case result in the award of benefits, plaintiffs counsel should be granted an extension of time pursuant to Rule 54(d)(2)(B) within which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days subsequent to the receipt of a notice of award of benefits from the agency; provided, however, any such extension of time **would not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act**.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

**VI.     Notice to the Parties**

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within

fourteen (14) ) days hereof.  **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties**.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 26th day of April 2010.

    /s/   *James G. Welsh*
United States Magistrate Judge